Daniel P. Larsen, OSB No. 943645
BUCHALTER, A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205
Telephone: 503.226.1191

R. Charles Henn Jr. (*pro hac vice* to be filed)
chenn@ktslaw.com
Charles H. Hooker III (*pro hac vice* to be filed)
chooker@ktslaw.com
Bethany R. Nelson (*pro hac vice* to be filed)
brnelson@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, an Oregon corporation; and **ADIDAS AG**, a foreign entity,<br><br>     Plaintiffs,<br><br>  v.<br><br>**EDIKTED LLC**, a Delaware limited liability company,<br><br>     Defendant. | Case No.<br><br>**COMPLAINT**<br>(Trademark Infringement, Unfair Competition, Trademark Dilution, and Deceptive Trade Practices)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") state the following for their Complaint against Defendant Edikted LLC ("Edikted").

1- COMPLAINT

# I.    INTRODUCTION

1.    For decades, adidas has manufactured, advertised, marketed, promoted, distributed, and sold footwear and apparel bearing its distinctive Three-Stripe trademark (the "Three-Stripe Mark"), which is covered by numerous incontestable federal trademark registrations. Consumers easily recognize the Three-Stripe Mark and uniquely associate it with adidas, so much so that multiple federal courts have held that the Three-Stripe Mark is famous among consumers in the United States.

2.    adidas has invested hundreds of millions of dollars building its brand in connection with the Three-Stripe Mark, and federal courts have repeatedly acknowledged that the Three-Stripe Mark is famous among consumers in the United States.

3.    Since at least as early as 1952, adidas has made exclusive use of the Three-Stripe Mark on footwear, and since at least as early as 1967, adidas has made exclusive use of the Three-Stripe Mark on apparel. Examples of apparel featuring the Three-Stripe Mark are shown below:

  



    4.    Well after adidas began selling apparel bearing its famous Three- Stripe Mark,

Edikted began offering for sale apparel bearing confusingly similar imitations of the Three-Stripe

Mark (the "Infringing Apparel"). Examples of the Infringing Apparel offered for sale by Edikted

featuring designs confusingly similar to the Three-Stripe Mark appear below and in **Exhibit 1**:

3-   COMPLAINT







5.    Edikted's Infringing Apparel imitates adidas's Three-Stripe Mark in a manner that is likely to cause consumer confusion and deceive the public regarding its source, sponsorship, or affiliation.

6.    Editkted's willful infringement of adidas's Three-Stripe Mark is irreparably harming adidas as it has no control over the quality, standards, or designs of the Infringing Apparel. Moreover, the massive volume and speed at which Ediked churns out new—potentially infringing—products exacerbates the harm to adidas's reputation while simultaneously depriving adidas of an adequate remedy at law for Edikted's ever-growing trademark infringement.

6-    COMPLAINT

7.    This is, therefore, an action at law and in equity for trademark infringement, dilution, and unfair competition arising under: the laws of Oregon; the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"); the fair business practices and unfair and deceptive trade practices acts of several states; and the common law. Among other relief, adidas asks this Court to: (a) permanently enjoin Edikted from distributing, marketing, or selling apparel using or bearing confusingly similar imitations of the Three-Stripe Mark; (b) award adidas monetary damages and to treble that award; (c) require Edikted to disgorge all of its profits from its sale of the Infringing Apparel; and (d) award adidas punitive damages, attorneys' fees, and costs.

## II.    PARTIES

8.    Plaintiff adidas AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 11230, D-91072 Herzogenaurach, Federal Republic of Germany.

9.    Plaintiff adidas America, Inc. is a corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217. adidas America, Inc. directs all U.S.-based operations on behalf of adidas AG, including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and licensing of and for ADIDAS-branded merchandise, including goods bearing the famous Three-Stripe Mark. adidas AG and adidas America, Inc., as well as any predecessors or related entities, are collectively referred to as "adidas."

10.    On information and belief, Defendant Edikted is a limited liability company organized and existing under the laws of Delaware, having a principal place of business at 1327 Willow Street, Los Angeles, CA 90013.

## III.    JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 2201 and 2202. Subject matter jurisdiction over adidas's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

12.     This Court has personal jurisdiction over Edikted because, upon information and belief, (a) Edikted has knowingly and purposefully targeted, marketed, distributed, offered for sale, and sold the Infringing Apparel to persons within the State of Oregon; (b) Edikted regularly transacts and conducts business within the State of Oregon; and (c) Edikted has otherwise made or established contacts within the State of Oregon sufficient to permit the exercise of personal jurisdiction.

13.     Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the acts or omissions giving rise to adidas's claims occurred in this District.

## IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.    adidas's Famous Three-Stripe Mark

14.     adidas is currently, and for many years has been, one of the world's leading manufacturers of athletic apparel, sportswear, footwear, and sporting equipment. At least as early as 1952, adidas began using the Three-Stripe Mark on footwear sold in the United States and worldwide. The Three-Stripe Mark quickly came to signify the quality and reputation of adidas footwear. Pages from adidas catalogs and screen shots from adidas's website featuring examples of footwear bearing the Three-Stripe Mark are attached as **Exhibit 2**.

15.     At least as early as 1967, adidas began using its Three-Stripe Mark on apparel sold in the United States and worldwide. The Three-Stripe Mark, which also is nonfunctional as

applied to apparel, quickly came to signify the quality and reputation of adidas apparel. Representative examples of apparel, including shirts, jackets, pants, and shorts, bearing the Three-Stripe Mark appear below and are attached as **Exhibit 3**.

16.    adidas has invested hundreds of millions of dollars building its brand in connection with the Three-Stripe Mark, and federal courts repeatedly have acknowledged that the Three-Stripe Mark is famous.

17.    adidas is the owner of a federal trademark registration, Reg. No. 2,284,308, issued by the United States Patent and Trademark Office ("USPTO") on October 12, 1999, for the Three-Stripe Mark, as depicted below, for "sports and leisure wear, namely pants."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of Certificate of Registration No. 2,284,308 is attached as **Exhibit 4**.

18.    adidas is the owner of a federal trademark registration, Reg. No. 2,278,591, issued by the USPTO on September 21, 1999, for the Three-Stripe Mark, as depicted below, for "sports and leisure wear, namely, shorts."

9-    COMPLAINT



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of Certificate of Registration No. 2,278,591 is attached as **Exhibit 5**.

19.    adidas is the owner of a federal trademark registration, Reg. No. 2,016,963, issued by the USPTO on November 19, 1996 for the Three-Stripe Mark, as depicted below, for "sports and leisure wear, namely jackets.



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of Certificate of Registration No. 2,016,963 is attached as **Exhibit 6**.

20.    adidas is the owner of a federal trademark registration, Reg. No. 2,058,619, issued by the USPTO on May 6, 1997 for the Three-Stripe Mark, as depicted below, for "sports and leisure wear, namely shirts."



10-  COMPLAINT

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of Certificate of Registration No. 2,058,619 is attached as **Exhibit 7**.

21.     adidas is the owner of a federal trademark registration, Reg. No. 3,029,127, issued by the USPTO on December 13, 2005, for the Three-Stripe Mark, as depicted below, for "clothing, namely, T-shirts, sweatshirts, jackets and coats."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of Certificate of Registration No. 3,029,127 is attached as **Exhibit 8**.

22.     adidas is the owner of a federal trademark registration, Reg. No. 3,087,329, issued by the PTO on May 2, 2006, for the Three-Stripe Mark, as depicted below, for "clothing, namely, shirts, T-shirts, sweatshirts, vests, jackets and coats."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. A copy of Certificate of Registration No. 3,087,329 is attached as **Exhibit 9**.

23.    adidas is the owner of a federal trademark registration, Reg. No. 4,910,643, issued by the USPTO on March 8, 2016, for the Three-Stripe Mark, as depicted below, for "Clothing, namely . . . pants, shorts, bottoms, . . . tracksuits, training suits, [and] warm-up suits." A copy of the Certificate of Registration for this execution of the Three-Stripe Mark is attached as **Exhibit 10**. An affidavit has been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.



24.    adidas is the owner of additional incontestable federal registrations for the Three-Stripe Mark covering other items of apparel, including athletic training suits and headwear, including Reg. Nos. 870,136, 3,183,656, 3,183,663, and 3,236,505. Copies of these Certificates of Registration are attached collectively as **Exhibit 11**.

25.    adidas is also the owner of federal registrations for the Three-Stripe Mark covering footwear, including Reg. Nos. 961,353, 1,815,956, 1,833,868, 2,278,589, 2,909,861, 2,999,646, 3,029,129, 3,029,135, and 7,863,660, many of which are incontestable. Copies of these Certificates of Registration are attached collectively as **Exhibit 12**.

26.    Additionally, adidas owns federal trademark registrations for the word marks THE BRAND WITH THE 3 STRIPES and THREE STRIPE LIFE, Reg. Nos. 1,674,229 and

6,897,937, respectively (issued by the USPTO on February 4, 1992 and November 15, 2022 respectively for various items of apparel and accessories). Affidavits have been filed for Reg. No. 1,674,229 pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable. Copies of these Certificates of Registration are attached collectively as **Exhibit 13.**

27.    In recent years, annual sales of products bearing the Three-Stripe Mark have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.

28.    adidas has invested hundreds of millions of dollars building its brand in connection with the Three-Stripe Mark, and federal courts have repeatedly stated that the Three-Stripe Mark is famous among consumers in the United States. Indeed, for more than 50 years, adidas has advertised and promoted the Three-Stripe Mark in the United States through virtually every marketing channel, including print, television, digital advertising, social media, influencer marketing, and sponsorships.

29.    Since introducing the Three-Stripe Mark, adidas has spent many millions of dollars promoting the mark and products bearing the mark in the United States. Beyond adidas's extensive promotion of the Three-Stripe Mark in connection with apparel, adidas has used the Three-Stripe Mark in connection with its frequent sponsorship of professional athletes, athletic tournaments, sports organizations, and collegiate sports teams across virtually every sport. For example, adidas has had longstanding relationships with Texas A&M University, the University of Kansas, Indiana University, the University of Nebraska, the University of Louisville, Arizona State University, Mississippi State University, and the University of Miami, among many other colleges and universities. Numerous sponsored athletes also wear apparel and footwear bearing

the Three-Stripe Mark, including: (a) soccer superstars Lionel Messi, Mohamed Salah, Trinity Rodman, Catarina Macario, and Lindsey Horan; (b) MLB all-stars J.D. Martinez, Julio Rodriguez, and Corey Seager; (c) professional golfers Collin Morikawa, Sergio Garcia, and Ludvig Aberg; (d) NFL quarterback and three-time Super Bowl champion Patrick Mahomes, as well as NFL stars Garrett Wilson and Amon-Ra St. Brown; (e) NBA stars James Harden, Damian Lillard, Donovan Mitchell, Trae Young, and Anthony Edwards; (f) 2024 Heisman Trophy Winner  and 2024 AP College Football Player of the Year Travis Hunter; and (g) top tennis players, including Stefanos Tsitsipas, Jessica Pegula, Alexander Zevrev, and Maria Sakkari. For decades, adidas has also sponsored the world-famous Boston Marathon, along with many other events, teams, clubs, and individuals.

30.    adidas also has sponsored the U.S. volleyball and beach volleyball teams, and it is known for sponsoring alpine athletes, including Mikaela Shifrin, Alice Robinson, and Petra Vlhova, as well as extreme sports athletes, such as the official adidas Skateboarding team. All of these sponsorships involve extensive use and marketing of the Three-Stripe Mark.

31.    Beyond the sports world, adidas has used the Three-Stripe Mark extensively in connection with lifestyle, athleisure, and street wear products, and adidas frequently has sponsored television and movie stars, social media influencers, and musical artists, including 13-time Grammy Award winning producer Pharrell Williams, pop stars Beyoncé Knowles, Katy Perry and Selena Gomez, iconic rappers B.o.B and DJ Kerwin Frost, and world renowned reggaeton artist Bad Bunny.

32.    adidas has also frequently sponsored music and lifestyle festivals and events, including, for example, Wanderlust and Lollapalooza.

33.     Unsolicited media coverage has referred to adidas's "classic three stripes" (Hondorp, Gabrielle, "The Best Tracksuits of 2024: Top Picks for Style, Speed and Comfort," *Sports Illustrated*, January 4, 2024), adidas as the "[b]rand with the Three Stripes" (Hernanadez, Jovani "Three Stripes Across 50 States: A Guide To The Best-Selling adidas Shoes In The U.S.," *Sneaker News*, November 15, 2023), adidas's "distinctive three-stripe pattern" (Gupta, Manjari, "5 sneaker models that define Adidas heritage," *Sportskeeda*, May 29, 2023), the "beloved Three Stripes icons" (Le, Michael, "The adidas PUFFYLETTE Creates An Illusory Homage To Iconic Three Stripes Sneakers," *Sneaker News*, December 8, 2022), adidas's "seminal three-stripes style" (Sandoval, Paolo, "From Samba to Superstar: Which Adidas Sneakers Are Right for You?," *Inside Hook,* October 19, 2022), "[t]hink of [a]didas and you think of the Three Stripes" (White, Mark, "Adidas: The history of the Three Stripes on football shirts," *FourFourTwo*, July 15, 2022), adidas's "signature three stripes" (Z., Yna, "Bringing the Lego 10282 Adidas Originals Superstar to life,"*AsiaOne*, July 14, 2021), "the iconic three-stripe [a]didas tag" (Romano, Brittany, "Adidas has finally made a golf shoe version of the popular three-striped Superstar sneaker," *Golf Digest*, August 13, 2020), adidas's "signature three-stripes" (Northman, Tora, "Adidas Originals' Burgundy Track Pants Are the Perfect Retro Staple," *Hypebae*, February 6, 2018), adidas's "signature three stripes" (Butler-Young, Sheena, "The Inside Scoop on How Adidas Became One of the Industry's Most Sought-After Brands," *Footwear News*, March 14, 2017), "iconic three stripes" (Reimel, Erin, "Alexander Wang Announced a Major Collab With Adidas at Fashion Week," *Glamour*, September 11, 2016), "famous Three Stripes" (Schwartz, Rob, "Three Brands That Won At The World Cup," *Forbes*, July 13, 2014). Copies of the foregoing and other unsolicited media articles discussing the adidas brand and the Three-Stripe Mark are attached collectively as **Exhibit 14.**

34.    In addition, adidas's advertising campaigns and sponsorships have themselves received extensive media coverage. For example:

- adidas's 2025 version of the "You Got This" campaign emphasizes the importance of coaches, parents, supporters, and teammates and features star athletes such as Anthony Edwards and Aitana Bonmatí alongside personal friends and supporters. *See* **Exhibit 15** ("Behind the 2025 Brand Campaign**:** We All Need Someone to Make Us Believe You Got This," *Inside3Stripes*, February 10, 2025).

- adidas's 2024 "You Got This" campaign features professional and amateur athletes—including Patrick Mahomes, Trinity Rodman, Lionel Messi, Linda Caicedo, Rohit Sharma, Anthony Edwards, Jude Bellingham and the New Zealand All Blacks rugby team—to address how pressure detracts from their enjoyment of playing a sport. *See* **Exhibit 16** ("Adidas tells athletes of all types: 'You got this,'" *MarketingDive*, February 12, 2024).

- In 2023, adidas launched a series of short films accompanied by a set of triptych stills shot by Chadwick Tyler, with some sets featuring partners, collaborators, and friends of the brand that have helped to tell the story of the Trefoil the world over including: Zinedine Zidane, Jenna Ortega, Pusha T, Anitta, Hoyeon Jung, David Beckham, Jennie, Stormzy. *See* **Exhibit 17** ("Adidas Originals Launches New Global Brand Platform: 'We Gave The World An Original. You Gave Us A Thousand Back,'" *adidas News*, September 15, 2023).

- In 2022, adidas launched a campaign in connection with the 2022 FIFA World Cup called "When Football Is Everything, Impossible is Nothing," which featured icons from across sports and media such as Lionel Messi, Karim Benzema, Achraf Hakimi, Son Heung-Min, Jude Bellingham, Pedro 'Pedri' González López, Serge Gnabry and Stormzy. *See*

**Exhibit 18** ("When Football Is Everything Impossible Is Nothing," *adidas News*, November 14, 2022).

- adidas's 2021 "Impossible is Nothing" campaign is a documentary-style work that extensively features the adidas trademarks, including the Three-Stripe Mark, throughout on apparel and footwear and is inclusive of people from different sports, genders, ethnicities, and nationalities, including Siya Kolisi, the first Black captain of the South African rugby team, Tiffany Abreu, the first trans woman to play in Brazilian Volleyball Superliga, Cyrill Gutsch, the award-winning designer and brand/product developer of Parley, Ranveer Singh, awarding-winning Hindi film actor, Mohamed Salah Hamed Mahrous Ghaly, Egyptian professional footballer for Liverpool and captain of the Egypt national team, and numerous WNBA superstars, including Candace Parker, Nneka Ogwumike, Layshia Clarendon, and Angel McCoughtry. *See* **Exhibit 19** ("Impossible Is Nothing: Inspiring The World To See Possibilities," *adidas News*, April 19, 2021).

- In 2020, adidas kicked off a campaign "Change Is a Team Sport," directed by and starring Jonah Hill, which emphasizes the power of teamwork and includes other icons such as K-pop's super girl group BLACKPINK, chart-topping producer-singer Pharrell Williams, Brazil's leading diva Anitta, Hong Kong-born singer-rapper Jackson Wang, DJ Kerwin Frost, Japanese fashion designer Nigo, professional gamer Ninja, American actress Yara Shahidi, and French soccer player Paul Pogba. *See* **Exhibit 20** ("Change Is A Team Sport," *adidas News*, January 26, 2020).

- In 2019, adidas recruited tennis star Billie Jean King and ESPN host Maria Taylor to "promote visibility of women in sport" with its "She Breaks Barriers" campaign. This advertisement also "features athletes Rahaf Khatib, Keni Harrison, Becky Sauerbrunn,

and Layshia Clarendon." *See* **Exhibit 21** (Smith, Jordan, "Adidas Launches Campaign for Equal Media Representation in Sport," *Runner's World*, March 12, 2019).

35.     adidas is highly active on social media on which it advertises, markets, and promotes its apprael bearing its Three-Stripe Mark, including in association with well-known figures in sports, music, and fashion, as well as other influencers and celebrities. For example, adidas's primary account has more than 29 million followers on Instagram 9.5 million on Tik Tok, and various other adidas social media accounts (e.g., for Originals or certain subcategories of performance products) have millions more.

36.     adidas has built up and now owns extremely valuable goodwill that is symbolized by the Three-Stripe Mark. As a result of adidas's widespread, continuous, and exclusive use of the Three-Stripe Mark in connection with its apparel for many decades, the general consuming public of the United States recognizes the Three-Stripe Mark as a designation of source of the goods of adidas and it is, therefore, a famous mark. The Three-Stripe Mark became famous long before Edikted began selling the Infringing Apparel.

**B.    Edikted's Unlawful Activities**

37.     Edikted is manufacturing, producing, marketing, distributing, offering for sale, and selling in interstate commerce in the United States apparel bearing confusingly similar imitations of adidas's famous Three-Stripe Mark, without authorization from adidas. The Infringing Apparel shares common features such as two, three, or four substantially parallel stripes running along the outseams of pants and shorts or along the sleeves of tops, which stripe designs are likely to infringe and dilute the Three-Stripe Mark.

38.     A non-exhaustive collection of examples of Edikted's Infringing Apparel is contained in **Exhibit 1**, and some are reproduced below:



39.     Compounding the likelihood of confusion, Edikted regularly uses models wearing the Infringing Apparel *and* adidas footwear prominently featuring the Three-Stripe Mark in its product

marketing images on the Edikted website and social media. Representative examples appear below

and in the attached **Exhibit 22**.









     40.    Edikted knowingly and willfully uses its Instagram account to advertise and market

the Infringing Apparel (including that bearing three stripes) to its more than 796 thousand followers,

examples of which are shown below and in **Exhibit 23**.





24-  COMPLAINT





25-  COMPLAINT









27-  COMPLAINT

41.    Edikted also uses its Instagram account intentionally to create a false association and confuse consumers into believing that adidas is associated with, affiliated with, sponsors, or otherwise approves of or endorses Edikted's Infringing Apparel by including gratuitous photos of adidas's apparel and footwear on the same person wearing Edikted's Infringing Apparel, examples of which are shown below and included in **Exhibit 24**.







29-  COMPLAINT









31-  COMPLAINT







42.    These uses of adidas footwear and apparel in Edikted's marketing materials exacerbates the likelihood that the Infringing Apparel has and will continue to cause consumer confusion and deceive the public regarding its source, sponsorship, or affiliation.

43.    Indeed, there is already consumer confusion as to an affiliation between the Infringing Apparel and adidas, as shown in the examples below and attached as **Exhibit 25**.





44.    Edikted's advertising, marketing, promotion, offering for sale, and sale of the

Infringing Apparel, and purposeful association with adidas's Three-Stripe Mark and adidas is likely

dilute adidas's Three-Stripe Mark by both blurring the distinctiveness of adidas's famous mark and by tarnishing its goodwill among consumers. On information and belief, the quality of the Infringing Apparel is far inferior to adidas apparel bearing the Three-Stripe Mark. The difference in quality has degraded and, if unchecked by injunctive relief, will continue to degrade the goodwill and reputation associated with adidas's famous Three-Stripe Mark. Consumers who are confused as to the source of the Infringing Apparel are likely to develop negative impressions of adidas's Three-Stripe Mark by associating the Three-Stripe Mark with the lower-quality Infringing Apparel put by out Edikted.

45.     In addition, adidas is likely to lose control of its reputation and the distinctive associations it has cultivated with the Three-Stripe Mark due to Edikted's actions. The examples of Edikted's advertising shown above illustrate some of the ways that Editked's conduct is diluting, blurring, and/or tarnishing adidas's Three-Stripe Mark and brand.

46.     On information and belief, Edikted knowingly, willfully, intentionally, and maliciously has adopted and used confusingly similar imitations of the Three-Stripe Mark on the Infringing Apparel.

47.     The Infringing Apparel designed, manufactured, produced, distributed, marketed, promoted, offered for sale, and/or sold by Edikted are not manufactured by adidas, nor is Edikted associated, affiliated, or connected with adidas, or licensed, authorized, sponsored, endorsed, or approved by adidas in any way.

48.     adidas used its Three-Stripe Mark extensively and continuously long before Edikted began distributing, marketing, promoting, offering for sale, or selling the Infringing Apparel; and the Three-Stripe Mark became famous long before Edikted began its infringement, unfair competition, and dilution of adidas's rights.

49.    Edikted's uses of confusingly similar imitations of adidas's famous Three-Stripe Mark are thus likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the Infringing Apparel are manufactured or authorized by, or in some manner associated with, adidas, which they are not.

50.    The likelihood of confusion, mistake, and deception engendered by Edikted's misappropriation of adidas's famous Three-Stripe Mark, or its offering of goods bearing confusingly similar imitations of adidas's Three-Stripe Mark, is causing irreparable harm to the goodwill symbolized by the Three-Stripe Mark and the reputation that it embodies. Among other things, Edikted's marketing and sale of the Infringing Apparel is: causing adidas to lose control over adidas's brand, as represented by the Three-Stripe Mark; diverting consumers from adidas; causing consumers to associate adidas's Three-Stripe Mark with a cheaper, lower quality, and/or budget-minded brand; causing consumers to affiliate adidas's Three-Stripe Mark and adidas brand with imagery and/or communications that are different from those adidas wishes to have the consuming public associate with its Three-Stripe Mark; and diminishing the goodwill adidas has built up over numerous decades in the Three-Stripe Mark.

51.    On information and belief, Edikted uses confusingly similar imitations of adidas's famous Three-Stripe Mark in connection with Edikted's advertising, marketing, and sale of apparel that directly competes with apparel offered for sale by adidas through the same channels of marketing and trade. For example, on information and belief, Edikted sells through some of the same retailers that sell adidas apparel.

52.    Edikted has shown a callous disregard for adidas's rights. Edikted thus has acted in bad faith, with malicious intent, and in knowing disregard of adidas's rights.

53.     adidas first contacted Edikted in 2024 to raise its concerns about the Infringing Apparel. Despite multiple communications between the parties, Edikted continues to refuse to cease advertising, offering for sale, and selling the Infringing Apparel, necessitating this civil action.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

54.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

55.     Edikted's use of confusingly similar imitations of adidas's Three-Stripe Mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Edikted's goods are manufactured or distributed by adidas, or are associated or connected with adidas, or have the sponsorship, endorsement, or approval of adidas.

56.     adidas and Edikted advertise, market, and sell their respective products through the same or overlapping channels; and Edikted's uses of stripes described in this Complaint are likely to cause confusion, deception, and mistake among consumers before, at the point of, and after the purchase of Edikted's products, resulting in initial-interest, point-of-sale, and post-sale confusion.

57.     Edikted has used marks confusingly similar to adidas's federally registered marks in violation of 15 U.S.C. §§ 1114 and 1125(a). Edikted's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to adidas's goodwill and reputation as symbolized by adidas's Three-Stripe Mark, for which adidas has no adequate remedy at law.

58.     Edikted's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark to adidas's great and irreparable harm.

59.     Edikted has caused and is likely to continue causing substantial injury to the public and to adidas; therefore, adidas is entitled to injunctive relief and to recover Edikted's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition)

60.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

61.     Edikted's use of confusingly similar imitations of adidas's Three-Stripe Mark has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Edikted's goods are manufactured or distributed by adidas, or are affiliated, connected, or associated with adidas, or have the sponsorship, endorsement, or approval of adidas.

62.     Edikted has made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a). Edikted's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to adidas's goodwill and reputation as symbolized by adidas's Three-Stripe Mark, for which adidas has no adequate remedy at law.

63.     Edikted's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark to the great and irreparable injury of adidas.

64.     Edikted's conduct has caused, and is likely to continue causing, substantial injury to the public and to adidas. adidas is entitled to injunctive relief and to recover Edikted's profits,

39-  COMPLAINT

actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15

U.S.C. §§ 1125(a), 1116, and 1117.

## THIRD CLAIM FOR RELIEF
### (Federal Trademark Dilution of the Three-Stripe Mark)

65.     adidas repeats and incorporates by reference the allegations in the preceding

paragraphs.

66.     For over sixty-five years, adidas has exclusively and continuously promoted and

used its registered Three-Stripe Mark in the United States. The Three-Stripe Mark became a

famous and well-known symbol of adidas and its products among the general public in the

United States well before Edikted began promoting, distributing, or offering for sale the

Infringing Apparel. Indeed, this Court previously held the Three-Stripe Mark to be

"unquestionably famous." *adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1247

(D. Or. 2016).

67.     Edikted is making use in commerce of confusingly similar imitations of adidas's

famous Three-Stripe Mark that dilute and are likely to dilute the distinctiveness of adidas's

famous Three-Stripe Mark by eroding the public's exclusive identification of this famous mark

with adidas, tarnishing and degrading the positive associations and prestigious connotations of

the famous Three-Stripe Mark, and otherwise lessening the capacity of the famous Three-Stripe

Mark to identify and distinguish adidas's goods.

68.     Edikted's actions demonstrate an intentional, willful, and malicious intent to trade

on the goodwill associated with adidas's Three-Stripe Mark or to cause dilution of the mark to

the great and irreparable injury of adidas.

69.     Edikted has caused and, unless enjoined by this Court, will continue to cause

irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and

value of adidas's famous Three-Stripe Mark in violation of 15 U.S.C. § 1125(c). adidas therefore is

entitled to injunctive relief and to Edikted's profits, actual damages, enhanced profits and damages,

costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

### FOURTH CLAIM FOR RELIEF
**(Oregon Common Law Trademark Infringement and Unfair Competition)**

70.     adidas repeats and incorporates by reference the allegations in the preceding

paragraphs.

71.     Edikted's use of confusingly similar imitations of adidas's Three-Stripe Mark is

likely to cause confusion, deception, and mistake by creating the false and misleading impression

that Edikted's goods are manufactured or distributed by adidas, or are associated or connected

with adidas, or have the sponsorship, endorsement, or approval of adidas.

72.     Edikted's actions constitute common law trademark infringement and unfair

competition under Oregon law, and have created and will continue to create, unless enjoined by

this Court, a likelihood of confusion to the irreparable injury of adidas. adidas has no adequate

remedy at law for this injury.

73.     On information and belief, Edikted has acted with full knowledge of adidas's use

of, and statutory and common law rights to, adidas's Three-Stripe Mark, and without regard to

the likelihood of confusion of the public created by Edikted's activities.

74.     Edikted's actions demonstrate an intentional, willful, and malicious intent to trade on

the goodwill associated with adidas's Three-Stripe Mark, to the great and irreparable injury of adidas.

75.     As a result of Edikted's actions, adidas has been damaged in an amount not yet

determined or ascertainable. At minimum, however, adidas is entitled to injunctive relief, to an

accounting of Edikted's profits, as well as adidas's damages, reasonable attorneys' fees, and costs.

Further, in light of Edikted's deliberate and malicious use of confusingly similar imitations of

41-  COMPLAINT

adidas's Three-Stripe Mark, and the need to deter Edikted from engaging in similar conduct in the future, adidas additionally is entitled to punitive damages.

### FIFTH CLAIM FOR RELIEF
**(State Trademark Dilution and Injury to Business Reputation)**

76.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

77.    For over sixty-five years, adidas has exclusively and continuously promoted and used its registered Three-Stripe Mark in the United States. The Three-Stripe Mark became a famous and well-known symbol of adidas and its products among the general public in the United States well before Edikted began promoting, distributing, or offering for sale the Infringing Apparel.

78.    Edikted is making use in commerce of confusingly similar imitations of adidas's famous Three-Stripe Mark that dilute and are likely to dilute the distinctiveness of adidas's famous Three-Stripe Mark by eroding the public's exclusive identification of this famous mark with adidas, tarnishing and degrading the positive associations and prestigious connotations of this famous mark, and otherwise lessening the capacity of the famous Three-Stripe Mark to identify and distinguish adidas's goods.

79.    Edikted's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark or to cause dilution of the mark to the great and irreparable injury of adidas.

80.    Edikted has caused and, unless enjoined by this Court, will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous Three-Stripe Mark in violation of the Oregon antidilution act, ORS § 647.107 (Westlaw through 2024 Sess.), as well as the antidilution laws of several other states, including Alabama, Ala. Code § 8-12-17 (Westlaw through 2024 Sess.); Alaska, AK. Stat.

42-  COMPLAINT

§ 45.50.180 (Westlaw through 2024 2d Sess.); Arizona, Ariz. Rev. Stat. Ann. § 44-1448.01

(Westlaw through 2024 2d Sess.); Arkansas, Ark. Code Ann. § 4-71-213 (Westlaw through 2024

2d Ex. Sess.); California, Cal. Bus. & Prof. Code § 14247 (West, Westlaw through 2024 Sess.);

Connecticut, Conn. Gen. Stat. § 35-11i(c) (Westlaw through 2024 Reg. and June Sess.);

Delaware, Del. Code Ann. tit. 6, § 3313 (Westlaw through 2024 Gen. Assemb.); Florida, Fla.

Stat. § 495.151 (Westlaw through 2024 2d Sess.); Georgia, Ga. Code Ann. § 10-1-451 (Westlaw

through 2024 Sess.); Hawaii, Haw. Rev. Stat. § 482-32 (Westlaw through 2024 Reg. and 1st

Spec. Sess.); Idaho, Idaho Code § 48-513 (Westlaw through 2024 2d Sess.); Illinois, 765 Ill.

Comp. Stat. 1036/65 (Westlaw through 2024 Sess.); Indiana, Ind. Code § 24-2-1-13.5 (Westlaw

through 2024 2d Sess.); Iowa, Iowa Code § 548.113 (Westlaw through 2024 Sess.); Kansas, Kan.

Stat. Ann. § 81-214 (Westlaw through 2024 Reg. and 1st Spec. Sess.); Louisiana, La. Stat. Ann.

§ 51:223.1 (Westlaw through 2024 1st Ex., 2d Ex., and Reg. Sess.); Maine, Me. Rev. Stat. Ann.

tit. 10, § 1530 (Westlaw through 2024 Sec. Sess.); Massachusetts, Mass. Gen. Laws ch. 110H,

§ 13 (Westlaw through 2024 2d Annual Sess.); Minnesota, Minn. Stat. § 333.285 (Westlaw

through 2024 Sess.); Mississippi, Miss. Code Ann. § 75-25-25 (Westlaw through 2024 Reg., 1st,

and 2d Ex. Sess.); Missouri, Mo. Ann. Stat. § 417.061(1) (Westlaw through 2024 2d Sess.);

Montana, Mont. Code Ann. § 30-13-334 (Westlaw through 2023 Sess.); Nebraska, Neb. Rev.

Stat. § 87-140 (Westlaw through 2024 2d Sess. and 1st Spec. Sess.); Nevada, Nev. Rev. Stat.

§ 600.435 (Westlaw through Reg. and Spec. Sess.); New Hampshire, N.H. Rev. Stat. Ann.

§ 350-A:12 (Westlaw through 2024 Sess.); New Jersey, N.J. Stat. Ann. § 56:3-13.20 (Westlaw

through 2024); New Mexico, N.M. Stat. Ann. § 57-3B-15 (Westlaw through 2024 2d Sess.);

New York, N.Y. Gen. Bus. Law § 360-l (Westlaw through 2024); Pennsylvania, 54 Pa. Cons.

Stat. § 1124 (Westlaw through 2024 Sess.); Rhode Island, 6 R.I. Gen. Laws § 6-2-12 (Westlaw

through 2024 Sess.); South Carolina, S.C. Code Ann. § 39-15-1165 (Westlaw through 2024);

Tennessee, Tenn. Code Ann. § 47-25-513 (Westlaw through 2024 Sess.); Texas, Tex. Bus. &

Com. Code Ann. § 16.103 (Westlaw through 2023 Reg., 2d, 3d, and 4th Sess.); Utah, Utah Code

Ann. § 70-3a-403 (Westlaw through 2024 4th Spec. Sess.); Washington, Wash. Rev. Code

§ 19.77.160 (Westlaw through 2024 Sess.); West Virginia, W. Va. Code § 47-2-13 (Westlaw

through 2024 Sess.); and Wyoming, Wyo. Stat. Ann. § 40-1-115 (Westlaw through 2024 Budget

Sess.).

81.    adidas, therefore, is entitled to injunctive relief, damages, and costs, as well as, if

appropriate, enhanced damages, punitive damages, and reasonable attorneys' fees.

### SIXTH CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices)**

82.    adidas repeats and incorporates by reference the allegations in the preceding

paragraphs.

83.    Edikted has been and is passing off its goods as those of adidas, causing a

likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of

Edikted's goods, causing a likelihood of confusion as to Edikted's affiliation, connection, or

association with adidas, and otherwise damaging the public.

84.    Edikted's conduct constitutes unfair and deceptive acts or practices in the course

of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes

of several states, including California Cal. Bus. & Prof. Code § 17200, *et seq.* (Westlaw through

2024 Sess.); Colorado, Colo. Rev. Stat. Ann. §§ 6-1-101 to 6-1-115 (Westlaw through 2024

Sess.); Delaware, Del. Code Ann. tit. 6, §§ 2531 to 2536 (Westlaw through 2024 Sess.); Georgia,

Ga. Code Ann. §§ 10-1-370 to 10-1-375 (Westlaw through 2024 Sess.); Hawaii, Haw. Rev. Stat.

§§ 481A-1 to 481A-5 (Westlaw through 2024 Reg. and 1st Spec. Sess.); Illinois, Ill. Comp. Stat.

44-  COMPLAINT

Ann. ch. 815, 510/1 to 510/7 (Westlaw through 2024 Sess.); Maine, Me. Rev. Stat. Ann. tit. 10, §§ 1211 to 1216 (Westlaw through 2024 2d Sess.); Minnesota, Minn. Stat. Ann. § 325D.43 to .48 (Westlaw through 2024 Sess.); Nebraska, Neb. Rev. Stat. §§ 87-301 to 87-306 (Westlaw through 2024 2d Sess.); New Mexico, N.M. Stat. Ann. §§ 57-12-1 to 57-12-22 (Westlaw through 2024 2d Sess.); New York, N.Y. Gen. Bus. Law § 349 (Westlaw through 2024 Sess.); Ohio, Ohio Rev. Code Ann. §§ 4165.01 to 4165.04 (Westlaw through 2024 Sess.); and Oklahoma, Okla. Stat. Ann. tit. 78, §§ 51 to 55 (Westlaw through 2024 2d Sess.).

85.    Edikted's unauthorized use of confusingly similar imitations of adidas's Three-Stripe Mark has caused and is likely to cause substantial injury to the public and to adidas. adidas, therefore, is entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, adidas prays that:

1.    Edikted and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by through or under authority from Edikted, or in concert or participation with Edikted, and each of them, be enjoined permanently from:

a.    advertising, promoting, offering for sale, or selling the Infringing Apparel or other goods bearing confusingly similar imitations of adidas's Three-Stripe Mark

b.    using the Three-Stripe Mark or any other copy, reproduction, colorable imitation, or simulation of adidas's Three-Stripe Mark on or in connection with Edikted's goods; and

c.    passing off, palming off, or assisting in passing off or palming off

Edikted's goods as those of adidas, or otherwise continuing any

and all acts of unfair competition as alleged in this Complaint;

2.    Edikted be ordered to cease offering for sale, marketing, promoting, and selling

and to recall all products sold under or bearing any identical or confusingly similar imitations of

adidas's Three-Stripe Mark that are in Edikted's possession, custody, or control, or have been

shipped by Edikted or under its authority, to any customer, including but not limited to, any

wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or

customer a copy of this Court's order as it relates to said injunctive relief against Edikted;

3.    Edikted be ordered to deliver up for impoundment and for destruction, all apparel,

signs, advertising, sample books, promotional materials, or other materials in the possession,

custody, or control of Edikted that are found to adopt, infringe, or dilute adidas's Three-Stripe

Mark or that otherwise unfairly compete with adidas and its products;

4.    Edikted be compelled to account to adidas for any and all profits derived by

Edikted from the sale or distribution of the Infringing Apparel;

5.    adidas be awarded all damages caused by the acts forming the basis of this

Complaint;

6.    Based on Edikted's knowing and intentional use of confusingly similar imitations

of adidas's Three-Stripe Mark, the damages awarded be trebled and the award of Edikted's

profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7.    Edikted be required to pay adidas the costs of this action and adidas's reasonable

attorneys' fees pursuant to 15 U.S.C. § 1117(a) and the state statutes and common law cited in

this Complaint;

8.      Based on Edikted's willful and deliberate infringement and dilution of adidas's Three-Stripe Mark, and to deter such conduct in the future, adidas be awarded punitive damages;

9.      adidas be awarded prejudgment and post-judgment interest on all monetary awards; and

10.     adidas have such other and further relief as this Court may deem just.

## JURY TRIAL DEMAND

adidas respectfully demands a trial by jury on all claims and issues so triable.

DATED: July 16, 2025                **BUCHALTER**, A Professional Corporation

By:  */s/ Daniel P. Larsen*
Daniel P. Larsen, OSB No. 943645
805 SW Broadway Suite 1500
Portland, OR 97205
Telephone:  503.226.1191

R. Charles Henn Jr. (*pro hac vice* to be filed)
chenn@ktslaw.com
Charles H. Hooker III (*pro hac vice* to be filed)
chooker@ktslaw.com
Bethany R. Nelson (*pro hac vice* to be filed)
brnelson@ktslaw.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone:  404.815.6500
Facsimile:  404.815.6555

Attorneys for Plaintiffs

47-  COMPLAINT